OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 6, 2001

Mr. Terry Julian
Executive Director
Texas Commission on Jail Standards
P. O. Box 12985
Austin, Texas 78711-2985

Opinion No. JC-0429

Re: Whether the Texas Commission on Jail Standards may inspect construction documents relating to the installation of fire sprinklers at a jail facility (RQ-0390-JC)

Dear Mr. Julian:

On behalf of the Texas Commission on Jail Standards (the "Commission"), you seek an opinion from this office concerning section 9A of repealed article 5115.1 of the Revised Civil Statutes, preserved and given effect as part of section 511.009 of the Government Code. *See* TEX. GOV'T CODE ANN. § 511.009 (Vernon 1998), *as amended by* Act of April 6, 1989, 71st Leg., R.S., ch. 20, § 1, sec. 9A, 1989 Tex. Gen. Laws 297. Specifically, you ask whether the Commission, in fulfilling its duty under section 9A to "inspect a facility," *see id.*, to determine whether there are areas where fire sprinkler heads should not be placed, may examine the blueprints for a structure not yet erected as well as examining structures already built.[1] The interpretation of "inspect[ion]" to include the inspection of such documents has, as you inform us, been the one by which the Commission has operated since the legislation was passed in 1989. We believe, in light of the legislative history of the measure and in light of the Commission's general duty to "review and comment on plans for the construction and major modification or renovation of county jails," *see* TEX. GOV'T CODE ANN. § 511.009(7) (Vernon 1998), that the Commission's interpretation of its authority in this regard is a reasonable one. We further conclude that a contrary interpretation would lead to an absurd result. Accordingly, we concur in the Commission's interpretation of the breadth of its authority to inspect a jail facility.

Section 9A provides in relevant part:

> (a) On the request of a sheriff, the commission shall *inspect a facility* to determine whether there are areas in the facility in which fire sprinkler heads should not be placed as a fire prevention measure. .
>
> . .

---

[1]Letter from Mr. Terry Julian, Executive Director, Texas Commission on Jail Standards, to Honorable John Cornyn, Texas Attorney General (June 8, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

> (b) If the commission determines that fire sprinkler heads should not be placed in a particular area within a facility, neither a county fire marshal nor a municipal officer charged with enforcing ordinances related to fire safety may require the sheriff to install sprinkler heads in that area.

Act of April 6, 1989, 71st Leg., R.S., ch. 20, § 1, sec. 9A, 1989 Tex. Gen. Laws 297 (emphasis added). Section 9A was added to article 5115.1 of the Revised Civil Statutes by Senate Bill 289 of the Seventy-first Legislature. In Senate Bill 1044, the Seventy-first Legislature also repealed article 5115.1 of the Revised Civil Statutes and codified it as part of the Government Code. *See* Act of May 11, 1989, 71st Leg., R.S., ch. 212, § 3.03, 1989 Tex. Gen. Laws 918, 968. Senate Bill 1044 provides that such a repeal "does not affect an amendment . . . of the statute by the 71st Legislature . . . . The amendment . . . is preserved and given effect as part of the code provision that revised the statute . . . ." *See* Act of May 11, 1989, 71st Leg., R.S., ch. 212, § 1.02, 1989 Tex. Gen. Laws 918. Accordingly, although section 9A is not incorporated in section 511.009 of the Government Code, it is given effect thereby. *See also* TEX. GOV'T CODE ANN. § 311.031(c) (Vernon 1998) ("The repeal of a statute by a code does not affect an amendment, revision, or reenactment of the statute by the same legislature that enacted the code. The amendment, revision, or reenactment is preserved and given effect as part of the code provision that revised that statute so amended, revised, or reenacted.").

As subsection (b) of section 9A makes clear, the Commission has the authority to determine the placement of any fire sprinkler heads. The question of the meaning of "inspect[ing] a facility," for the purposes of subsection (a), is ultimately whether the Commission's authority in this regard may be exercised in the planning phase of a jail facility, or only after the facility has been built. If "inspect[ing] a facility" is narrowly construed, it means the Commission may only examine an existing jail to determine whether the placement of certain sprinkler heads is permissible. If, however, a facility may be inspected as it is being designed, the Commission may prevent the installation of certain sprinkler heads.

The bill analysis for Senate Bill 289, which enacted section 9A, explains the background for it thus:

> *During the construction of a new county jail facility,* the county follows construction standards set by the Texas Commission on Jail Standards. The Commission also sets regulations with regard to fire prevention. Because of the many suicide attempts that occur in prison or jail facilities, local authorities with the approval of the Commission would like to use their discretion with regard to the placement of overhead fire sprinklers in individual cells.

HOUSE COMM. ON COUNTY AFFAIRS, BILL ANALYSIS, Tex. S.B. 289, 71st Leg., R.S. (1989) (emphasis added).

In a public hearing on the bill on February 21, 1989, Senator Lyons, its author, said in describing it:

> In recent years county authorities have had several problems relating to the overcrowding situations in jail facilities. One of the problems has been misuse by inmates of fire sprinkler heads in jail cells. Many times inmates have actually committed suicide by hanging from fire sprinkler heads in jail cells, have also used cigarettes or lighters and held those up to sprinkler heads causing them to go off. *Senate Bill 289 allows the Commission on Jail Standards to have the final discretion as to [where] sprinkler heads should be placed in county jail facilities.*

*Hearings on Tex. S.B. 289 Before the Senate Comm. on Intergovernmental Relations,* 71st Leg., R.S., (Feb. 21, 1989) (emphasis added).

Senator Lyons then read into the record portions of a letter from the sheriff of Dallas County, describing the problem the legislation was designed to address:

> Dallas County is aggressively attempting to deal with its ballooning inmate population. In 1988, the citizens of this county approved a multimillion dollar bond issue to build a new 2300 bunk detention facility. *During the architectural and engineering development of this project,* we discovered that current fire safety codes will require the installation of a sprinkler system. I feel the application of these fire codes to our detention system to be perplexing and unnecessary.

*Id.* (emphasis added).

As the emphasized language makes clear, the legislature's attention had been directed to the issue of where and whether such sprinkler heads ought to be included in the design of new buildings as well as where and whether they should be placed in existing buildings; and Senator Lyon's statement makes plain the intent that the power to decide where such sprinkler heads may be positioned lies with the Commission. Indeed, a question to Senator Lyons from an unidentified speaker suggests more certainty that the Commission can deal with projected placements than existing ones:

> *This is addressing the construction phase. Does it make a provision for the removal of existing fire sprinkler head systems?* . . . . What you want to actually do is provide that it can *also* provide for removal.

*Id.* (emphasis added).

It has been, as you inform us, the long-standing interpretation of the Commission that its powers with respect to sprinkler head placement include the power to reject such placements in the planning stage. *See* Request letter, *supra* note 1, at 2. In our view, that interpretation is entirely consonant with the legislative history recited above. It is moreover consistent with the duty of the Commission to "review and comment on plans for the construction and major modification or renovation of county jails," *see* TEX. GOV'T CODE ANN. § 511.009(a)(7) (Vernon 1998), pursuant to which the Commission has adopted chapter 257, of title 37 of the Texas Administrative Code, entitled "Construction Approval Rules." *See* 37 TEX. ADMIN. CODE §§ 257.1-.11 (2001). That the inspection of a facility for the purposes of section 9A includes the inspection of the plans for its design or construction appears to us, in this light, an entirely reasonable conclusion. "The construction of a statute by an agency charged with its execution is entitled to serious consideration so long as the construction is reasonable and does not contradict the plain language of the statute." *Simplex Elec. Corp. v. Holcomb*, 949 S.W.2d 446, 447 (Tex. App.–Austin 1997, pet. denied).

Moreover, a contrary interpretation in this instance would lead to an absurd result. That is, if the Commission had veto power over the positioning of sprinkler heads only in existing buildings, a county could be forced by local fire codes to install such sprinkler heads in the construction, only to have the Commission immediately thereafter demand their removal, imposing both the cost of installation and that of retrofitting on the county. This would be wasteful and unreasonable. We are charged by the Code Construction Act with presuming that "a just and reasonable result is intended" by a statute. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 1998). Concluding, therefore, that the Commission has authority to inspect not only existing jail facilities but also blueprints for new or renovated facilities is consonant with the Commission's long-standing interpretation of this authority as well as the legislative history of the statutory grant, and avoids the absurd consequences of a contrary interpretation.

## SUMMARY

The Commission on Jail Standards, in fulfilling its duty to inspect a facility to determine whether there are areas where fire sprinkler heads should not be placed, has the authority to examine blueprints for a structure not yet constructed as well as to examine structures already built.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee